**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maris S. Mitchell,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Patrick R. Donahoe, Postmaster General, United States Postal Service,<br><br>　　　　　　　Defendant. | No. CV 11-02244-PHX-JAT<br><br>**ORDER** |

Currently pending before the Court are Defendant's Motion for Summary Judgment (Doc. 33) and Defendant's Motion to Strike Plaintiff's Surreply (Doc. 46). Also pending before the Court is Plaintiff's Motion to Compel (Doc. 50). The Court now rules on the motions.

**I.　　Factual Background**

Plaintiff Maris S. Mitchell worked for the United States Postal Service ("USPS") as a Letter Box Mechanic ("MES"). (Doc. 30 at 2). Plaintiff's job duties consisted of "perform[ing] major repair and overhaul work on street letter boxes using power hand tools and welding equipment for cutting, shaping, bending and attaching metal material." (Doc. 37-3 at 2). For the majority of the day, an MES works in the field performing his or her duties without supervision. (Doc. 15 at 4; Doc. 37-1 at 80). At all times relevant to the present case, Plaintiff was scheduled to work as an MES employee from 6:00 AM until 2:50 PM. (Doc. 31-2 at 6). During the work day, Plaintiff was allotted a thirty (30) minute lunch and two (2) fifteen (15) minute breaks. (Doc. 15 at 4).

In May of 2010, the USPS received an anonymous tip concerning Plaintiff

conducting personal business while on the clock and in her Postal vehicle. (Doc. 30-2 at 25). In response to this anonymous tip, on June 8, 2010, the USPS Office of the Inspector General (OIG) initiated an investigation of Plaintiff's daily activities at work. (Doc. 30 at 3).

Preliminary surveillance revealed Plaintiff "went to the YMCA located at 222 E. Olympic Drive, Phoenix, AZ 85040, every Tuesday and Thursday each week." (Doc. 30-2 at 25). The preliminary surveillance also revealed that Plaintiff used her Postal vehicle to drive to the YMCA. (*Id.*). On July 27, 2010, Special Agent ("SA") Jacqueline Cross observed Plaintiff arrive at the YMCA at 9:09AM and leave at 10:28AM, for a total of one (1) hour and nineteen (19) minutes. (*Id.* at 25). On July 29, 2010, SA Cross observed Plaintiff's Postal Service vehicle already parked at the YMCA at 9:33AM and observed Plaintiff leave the YMCA at 10:45AM. (*Id.*). Also on July 29, 2010, after leaving the YMCA, SA Cross observed Plaintiff stop at an ATM until 10:51AM. (*Id.*). The total time Plaintiff spent at the YMCA and the ATM on July 29, 2010 was one (1) hour and eighteen (18) minutes. (*Id.*). On August 3, 2010, SA Cross observed Plaintiff arrive at the YMCA at 9:09AM and leave at 11:00AM for a total of one (1) hour and fifty-one (51) minutes. (*Id.* at 26). On August 5, 2010, SA Cross observed Plaintiff arrive at the YMCA at 9:25AM and leave at 10:39AM for a total of one (1) hour and fourteen (14) minutes. (*Id.*).[1]

On September 1, 2010, SA Cross and SA London Hirose interviewed Plaintiff regarding their investigation. (Doc. 30 at 6). During the interview, SA Cross first asked Plaintiff to state what she does in a "normal 8 hour day." (Doc. 30-2 at 26). Plaintiff stated she does not leave the Processing and Distribution Center at the Post Office each

---

[1] Plaintiff "denies the allegations asserting specific times that the OIG purportedly observed or videoed her at the YMCA while on active duty." (Doc. 36 at 2). However, Plaintiff does not dispute the specific dates or times as stated by SA Cross. (*See Id.*) ("[The videos] simply show Plaintiff arriving and then leaving the YMCA and at one point an ATM, and do not support the claims made by OIG."). Accordingly, because these facts are undisputed, the Court takes them as true for purposes of the Motion for Summary Judgment.

morning until 8:00AM or 9:00AM. (*Id.*). Plaintiff also stated "she doesn't really take a lunch break because she carries her own food in the truck and eats while she works" and "she has to make up time." (*Id.*).

SA Cross then informed Plaintiff that she had seen Plaintiff's postal vehicle parked at the YMCA. In response, Plaintiff stated that the "YMCA is in the area she lives in" and she sometimes "swings by there to give a friend teaching a class some materials." (*Id.* at 27). Plaintiff stated she "may hang out there fifteen to twenty minutes but that is about it." (*Id.*). SA Cross then explained to Plaintiff that she had conducted surveillance and found that Plaintiff goes to the YMCA "every Tuesday and Thursday and that [Plaintiff] stays for one hour to two hours each time." (*Id.*). Plaintiff then apologized and stated "she has been working out at the YMCA every Tuesday and Thursday since March of 2010." (*Id.*). Plaintiff further stated "she made a bad decision but she really does love her job and works hard at it." (*Id.*). Plaintiff also stated "she did her job so efficiently that she ended up finding additional time." (*Id.*).

On September 13, 2010, Stephen Nelson, manager of the Field Maintenance Department, conducted a "Fact-Finding" interview with Plaintiff after reviewing the investigation report prepared by the OIG. (Doc 30-2 at 33-36). During this interview, Plaintiff stated that the YMCA was not in her "regular area" of duties and she considered the time she spent at the YMCA her "lunch and break time." (*Id.*). Plaintiff also stated that she "sometimes eat[s] a sandwich or lunch" while she is working. (*Id.*). Mr. Nelson also questioned Plaintiff regarding the seven and one half hours she reported she worked on July 29, 2010. (*Id.*). Mr. Nelson asked Plaintiff if that was "a true or close account of your activities" on July 29, 2010. (*Id.*). In response, Plaintiff stated, "Of course not, management has been aware for years that my paperwork does not reflect my activities. I have made it clear to management many times that I don't even claim my union time, because I still put out a day's work." (*Id.* at 35). Following the interview, Plaintiff was placed on paid administrative leave pending resolution of the matter. (Doc. 30-9 at 3).

On September 29, 2010, Mr. Nelson submitted a "Proposed Personnel Action"

regarding Plaintiff. (Doc. 30-8 at 15). Mr. Nelson reported Plaintiff was charged with "Employee Misconduct/ Unauthorized Use of US Postal Service Equipment and Fuels/ Claiming Wages for Work Not Performed." (*Id.*). Mr. Nelson also stated that during "the Fact Finding process, [Plaintiff] continued to deny any wrong doing or accept any responsibility for her [actions]." (*Id.*). On the second page of the form, Mr. Nelson proposed that Plaintiff should be removed from the Postal Service. (*Id.* at 16). The form was also reviewed and signed by Terry Cook, the Manager of Maintenance Operations. (*Id.*).

On October 12, 2010, Mr. Nelson issued Plaintiff a Notice of Removal that stated Plaintiff would be removed from the Postal Service on November 27, 2010. (Doc. 30-2 at 77). The Notice of Removal informed Plaintiff the reasons for removal were "violation[s] of postal standards of conduct: claiming wages for work not performed." (*Id.*).

Following receipt of the Notice of Removal, Plaintiff, through the American Postal Workers Union ("APWU"), initiated grievance proceedings regarding her removal. On November 3, 2010, Plaintiff was denied at step one of the grievance proceedings. (Doc. 30-2 at 69). On November 18, 2010, Plaintiff was denied at step two of the grievance proceedings. (Doc. 30-7 at 25-26). On November 29, 2010, Plaintiff appealed her grievance to arbitration. (*Id.* at 26).[2]

On March 10, 2011, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC). On August 17, 2011, the EEOC issued a "Final Agency Decision" regarding Plaintiff's complaint. (Doc. 31-2 at 2). The EEOC found that "the evidence does not support a finding that the complainant was subjected to discrimination as alleged." (*Id.*).

On November 15, 2011, Plaintiff filed a Complaint with this Court. (Doc. 1). On February 14, 2012, Defendant filed a Motion for More Definite Statement arguing Plaintiff's complaint failed to meet the pleading requirements of Rule 8(a). (Doc. 9). On

---

[2] On June 17, 2011, prior to arbitration, the parties reached a settlement agreement and Plaintiff was reinstated with no back pay. (Doc. 30 at 8).

- 4 -

May 7, 2012, this Court granted Defendant's Motion for More Definite Statement and ordered Plaintiff to file an Amended Complaint. (Doc. 14).

On May 21, 2012, Plaintiff filed an Amended Complaint alleging discrimination and disparate treatment in violation of Title VII of the Civil Rights Act of 1964. (Doc. 15).

## II.     Legal Standard

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A) & (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Id.* at 248. A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

## III.    Analysis

Courts have consistently utilized the burden-shifting approach established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), when reviewing motions for summary judgment in claims for disparate treatment. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). Under the

*McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. 411 U.S. at 802. To establish a prima facie case of discrimination under Title VII, a plaintiff must show that: (1) plaintiff belongs to a class of persons protected by Title VII, (2) plaintiff performed his or her job satisfactorily, (3) plaintiff suffered an adverse employment action, and (4) plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as plaintiff. *Electra Cent. Credit Union*, 439 F.3d at 1028. "Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

"Under the McDonnell Douglas framework, [t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang v. Univ. of California, Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000) (internal citation omitted). The Supreme Court has clarified that "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

Once the plaintiff has established a prima facie case of discrimination, the burden of production "shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment decision." *Washington v. Garrett*, 10 F.3d 1421, 1432 (9th Cir. 1993). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence" the reasons for the adverse employment action against the plaintiff. *Burdine*, 450 U.S. at 255.

If the defendant meets this burden of production, the presumption created by the prima facie case is rebutted and the burden shifts back to the plaintiff. *Id.* The plaintiff must then prove that the defendant's asserted reason is a mere pretext for discrimination. *Id.* at 256. In the context of a motion for summary judgment, the plaintiff must raise a genuine issue of material fact that the defendant's legitimate, non-discriminatory reason

for an adverse employment action was pretextual. *Snead v. Metro. Prop. Cas. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001).

### A. Plaintiff's Prima Facie Case

Defendant argues that Plaintiff has failed to establish a prima facie case and, as a result, the Court should grant summary judgment in favor of Defendant. (Doc. 33 at 4). Specifically, Defendant argues that Plaintiff has failed to meet the fourth element for a prima facie case because Plaintiff is unable to show that similarly situated employees received more favorable treatment as the result of similar conduct. (*Id.* at 5).[3] In response, Plaintiff argues that she has provided facts and evidence that show five similarly situated employees who were received more favorable treatment when disciplined for similar conduct. (Doc. 35 at 5).

As stated above, the fourth element a plaintiff must prove to establish a prima facie case of Title VII discrimination is that the plaintiff was treated differently than a similarly situated employee who does not belong to the same protected class as plaintiff. *Electra Cent. Credit Union*, 439 F.3d at 1028. In other words, a plaintiff must show that the other employee (1) was similarly situated and (2) received more favorable treatment from the employer.

Individuals are similarly situated for purposes of a Title VII discrimination claim when "they have similar jobs and display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). The "employee's roles need not be identical; they must only be similar in all material respects." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (internal citations omitted). Determining whether employees are similarly situated is a fact-intensive inquiry "and what facts are material will vary depending on the case." *Id.* at 1157-58 ("Similarity between two persons or groups of people is a question of fact that cannot be mechanically resolved by determining whether they had the same supervisor without attention to the underlying

---

[3] Defendant concedes elements one and three and do not argue that Plaintiff has failed to meet the second element.

issues.").[4] Generally, employees are considered similarly situated when they have similar jobs and display similar conduct. *Vasquez*, 349 F.3d at 641. The Court will consider whether the five employees identified by Plaintiff are similarly situated for purposes of Plaintiff's prima facie case.

### 1. Thomas Long

Plaintiff alleges that Thomas Long received preferential treatment by the USPS. In response, Defendant argues that Mr. Long cannot support Plaintiff's disparate treatment claim because Mr. Long is not similarly situated to Plaintiff. (Doc. 33 at 7). Specifically, Defendant argues that, unlike Plaintiff, (1) Mr. Long was a veteran and (2) Mr. Long had worked with the USPS long enough to be eligible for retirement. (*Id.*).[5]

The facts in this case indicate that Mr. Long was removed for the same violations that Plaintiff was charged with and went through the same procedures as Plaintiff, but was ultimately given the option to retire with a "clean" employment record. (Doc 31-2 at 11; Doc. 30 at 11). However, the facts also indicate that Mr. Long's status as a veteran qualified him under the Uniformed Services Employment and Reemployment Rights Act ("USSERA") rules which mandated certain considerations that are not afforded to non-veterans. (Doc. 31-2 at 11). Further, Mr. Long had almost thirty-nine (39) years of service and was retirement eligible, compared to Plaintiff who only had twelve (12) years of service and was not eligible for retirement. (*Id.* at 12)

As stated above, employees are considered similarly situated if they are "similar in all material respects." *Hawn*, 615 F.3d at 1157. Plaintiff does not claim she is a veteran or dispute the years of service performed by her or Mr. Long. Accordingly, the Court finds Plaintiff and Mr. Long are not similar in all material respects. *See Moran v. Selig*, 447 F.3d 748, 756 n.14 (9th Cir. 2006) (stating Plaintiffs were not similarly situated in all

---

[4] The Sixth Circuit Court of Appeals has explained this to require that the employees be "similar in all of the *relevant* aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

[5] Plaintiff does not dispute these facts. (Doc. 35 at 5-7)

- 8 -

material respects to employees who had worked long enough to qualify for benefits).

### 2. Aaron Sagalow

Plaintiff alleges she received disparate treatment when compared to Aaron Sagalow. Plaintiff alleges she is "informed and believes that Mr. Sagalow was subsequently allowed to voluntarily retire in lieu of termination." (Doc. 35 at 8). Plaintiff further alleges that the OIG did not interview Mr. Sagalow regarding his conduct "until after she filed her grievance" in order to "cover up that they treated [Plaintiff] discriminatorily." (*Id.* at 7). In response, Defendant argues that there is no evidence that shows Aaron Sagalow received any preferential treatment, and as a result, Plaintiff cannot prove discriminatory treatment in regards to Mr. Sagalow. (Doc. 33 at 8).

Plaintiff's allegation that she is "informed and believes that Mr. Sagalow was subsequently allowed to voluntarily retire in lieu of termination" is not supported by the record. Plaintiff offers no factual allegations or evidence to support her belief. (Doc. 36 at 5). Rather, Plaintiff states "further discovery is necessary to prove this [belief]." (*Id.*). A party opposing a motion for summary judgment "may not rely solely on conclusory allegations in the pleadings . . . but must, instead, offer some evidence at least outlining a factual dispute." *United States v. Allen*, 578 F.2d 236 (9th Cir. 1978) (per curiam). Accordingly, Plaintiff has failed to create a genuine issue of material fact regarding her claim that Mr. Sagalow was allowed to retire in lieu of termination.

Further, the facts in this case indicate that Mr. Sagalow and Plaintiff were both charged with similar violations, investigated by OIG, and ultimately issued a notice of removal. (Doc. 31-6 at 41). While Mr. Cook stated in his investigative affidavit that he "believes that the OIG was aware of Mr. Sagalow's conduct" around the same time Plaintiff was investigated and charged, he also states that the OIG was "unable to get video footage at the time." (Doc. 30-8 at 5). Plaintiff offers no evidence to support her claim that OIG or the USPS delayed investigation of Mr. Sagalow in order to "cover up that they treated Plaintiff discriminatorily." (Doc. 35 at 7). The fact that investigation of Mr. Sagalow was initiated six months after investigation of Plaintiff was initiated does

not, on its own, suggest Mr. Sagalow was treated favorably compared to Plaintiff. As a result, Plaintiff has failed to create a genuine issue of material fact that Mr. Sagalow was a similarly situated employee who were received more favorable treatment as a result of similar conduct.

### 3. George Graczyk

Plaintiff argues she received disparate treatment compared to George Graczyk. (Doc. 35 at 8-9). Specifically, Plaintiff argues that although both she and Mr. Graczyk were cited for violating the same section of the Employee and Labor Relations Manual (ELM), Mr. Graczyk did not suffer the same disciplinary action but instead was given a two week suspension. (*Id.* at 9). In response, Defendant argues that Mr. Graczyk cannot be considered similarly situated to Plaintiff because, unlike Plaintiff, Mr. Graczyk was a supervisor and Plaintiff and Mr. Graczyk engaged in different conduct. (Doc. 30 at 16).

The Ninth Circuit Court of Appeals has stated that "[e]mployees in supervisory positions are generally deemed not to be similarly situated to lower level employees." *Vasquez*, 349 F.3d at 642. However, determining whether two employees are similarly situated "is a question of fact that cannot be mechanically resolved . . . without attention to the underlying issues." *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010). In the present case, Mr. Graczyk was a "Supervisor of Maintenance Operations" and was Plaintiff's direct supervisor. (Doc. 30-7 at 11). Mr. Gracyzk's time was accounted for differently because he was a supervisor. (Doc. 30-8 at 11).

Additionally, employees are generally considered not to be similarly situated when the type and severity of the employee's conduct was dissimilar. *Vasquez*, 349 F.3d at 642 (holding that employees were not similarly situated where the employees engaged in different conduct). The type of conduct Mr. Graczyk engaged in was different than the type of conduct Plaintiff engaged in. Plaintiff was charged with claiming wages for work not performed, using a postal vehicle and postal gas for conducting personal business, and falsifying documentation. (Doc. 30-8 at 4). In contrast, Mr. Graczyk violated USPS policy by "us[ing] a Postal computer to send a[n] [inappropriate] personal e-mail." (Doc.

31-10 at 2). Further, Mr. Graczyk's conduct only occurred once, whereas Plaintiff's conduct occurred twice a week over at least two months. (*Id.*). *See Jones v. Wal-Mart Stores, Inc.*, No. CV-07-0775-PHX-SMM, 2009 WL 2382435, at *7 (D. Ariz. Aug. 3, 2009) (stating other employees were not similarly situated because "there is no admissible evidence that any of the other employee's actions rose to the same level of Plaintiff's conduct, both in terms of severity and frequency."). Because Mr. Graczyk held a supervisory position and Mr. Graczyk's conduct occurred on only one occasion and was not comparable in nature, Mr. Graczyk cannot be considered similarly situated to Plaintiff.

### 4. Stephen Nelson

Plaintiff argues she received disparate treatment compared to Stephen Nelson. (Doc. 35 at 9). Specifically, Plaintiff alleges that she "and Mr. Nelson are similarly situated in that both have the same responsibility regarding . . . security related matter as stated on each of their security badges." (*Id.* at 10). Plaintiff further argues that Mr. Nelson committed a violation of "comparable seriousness" to Plaintiff's violation, but received "significantly lesser punishment[] than Plaintiff." (*Id.*). In response, Defendant argues that Mr. Nelson cannot be considered similarly situated because he was a manager in a supervisory position and Mr. Nelson's conduct was "different from Plaintiff's misbehavior." (Doc. 39 at 4).

While a plaintiff seeking to establish a prima facie case regarding disparate treatment does not need to show the other employee is identically situated, a plaintiff must show that the other employee is similarly situated in "*all material* respects." *Moran v. Selig*, 447 F.3d 748, 754 (9th Cir. 2006) (emphasis added). *See also McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir. 2001) ("[E]mployees must have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination.") (*cited with approval in Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 660 (9th Cir. 2002)). In the present case, Plaintiff's allegation that Mr. Nelson had the same security clearance is not enough

on its own to show Plaintiff and Mr. Nelson are similarly situated in all material respects.

Further, as discussed above, employees in supervisory or managerial positions are generally not considered similarly situated to lower level employees who are not supervisors or managers. *Vasquez*, 349 F.3d at 642. The record in the present case indicates that Mr. Nelson was the Manager of Field Maintenance Operations ("FMO"). (Doc. 30-2 at 2). Specifically, Mr. Nelson was the "[m]anager of the department to which [Plaintiff] was assigned." (Doc. 30-2 at 3).

Mr. Nelson's conduct was also of a significantly different nature than Plaintiff's conduct. Mr. Nelson was "caught allowing a retired FMO manager access to the [Processing and Distribution Center]" and through the office's private passage which required the use of Mr. Nelson's access badge. (Doc. 30-2 at 6). Mr. Nelson's conduct did not involve result in claiming wages for work not performed or falsifying documentation. (Doc. 30-8 at 4). An employee is not considered similarly situated if he "did not engage in problematic conduct of comparable seriousness to that of [the plaintiff]." *Vasquez*, 349 F.3d AT 641. *See also Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). ("Although these employees did commit serious violations, it appears none amassed a record of misconduct comparable to [Plaintiff's]."). As a result, because Mr. Nelson had a supervisory position and engaged in significantly different conduct, Mr. Nelson is not similarly situated to Plaintiff for purposes of Plaintiff's prima facie case.

### 5.  Craig Szymanski

Plaintiff argues that she received disparate treatment when compared to Craig Szymanski who was caught taking "extended lunches." (Doc. 35 at 8). Plaintiff claims that "a fact finding interview was conducted" in regards to Mr. Symanski's conduct and was disciplined by counseling and a verbal warning. (*Id.*). In response, Defendant argues that Mr. Szymanski and Plaintiff cannot be considered similarly situated because although Mr. Szymanski was seen multiple times having breakfast, the total time he spent never exceeded an hour and "thus did not exceed the total time allotted for his daily breaks." (Doc. 30 at 14). Defendant also argues in their Reply in Support of Motion for

Summary Judgment that Mr. Szymanski cannot be considered similarly situated to Plaintiff because Mr. Szymanski was a "[p]ostal manager." (Doc. 39 at 4).

The facts in this case indicate that Mr. Szymanski was observed going to a restaurant "first thing in the morning right after clocking in." (Doc 30-2 at 5). Although Mr. Nelson affidavit stated that Mr. Szymanski's "total time spent at the restaurant never exceeded one hour, which would have been his combined lunch and break times" (*Id.*), an e-mail from Mr. Nelson to Mr. Cook indicates that on at least one occasion, Mr. Szymanski spent one (1) hour and four (4) minutes at the restaurant. (Doc. 38-2 at 14). While one hour and four minutes is significantly less than the length of time Plaintiff was observed at the YMCA, both individuals exceeded the allotted hour designated for their daily break.[6] Further, Defendant's argument that Mr. Szymanski was a postal manager is not supported by the record. The record before the Court indicates that, similar to Mr. Sagalow and Mr. Long, Mr. Szymanski was a "Building Equipment Mechanic, PS-9, on Tour 2." (Doc. 30-8 at 4-5).

Considering the similar job responsibilities between Plaintiff and Mr. Szymanski and the similar type of conduct, the Court finds that Plaintiff has shown a genuine issue of material fact over whether Mr. Szymanski is a similarly situated employee. Although there is little evidence in the record supporting Plaintiff's claim that she is similarly situated to Mr. Szymanski, given the minimal requirement of proof necessary to establish a prima facie case under Title VII and viewing the facts in the light most favorable to the Plaintiff at the summary judgment stage, the Court finds that Plaintiff has carried her burden under the *McDonnell Douglas* framework and proven a prima facie case. *See Gil v. JPMorgan Chase Bank, N.A.*, No. CIV 07-0181-PHX-SMM, 2009 WL 166930, at \*5 (D. Ariz. Jan. 26, 2009) ("As noted, the requisite degree of proof necessary to establish a prima facie case for Title VII on summary judgment is minimal."). The burden now shifts to Defendant to produce evidence of a legitimate and non-discriminatory reason for

---

[6] The Court notes that the fact finding interview regarding Mr. Szymanski's violation is not included in the record.

- 13 -

terminating Plaintiff. *Vasquez*, 349 F.3d at 640.

### B.     "Legitimate, Non-Discriminatory Reason"

Because Plaintiff established a prima facie case for discrimination, the burden of production shifts to Defendant to articulate nondiscriminatory reasons for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. To satisfy this burden, the defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 257 (1981).

Defendant argues that Plaintiff's violations of Postal Service policy and claiming wages for work not performed constitute a legitimate nondiscriminatory reason for Plaintiff's termination. (Doc. 39 at 5). Defendant has presented evidence that a formal investigation revealed Plaintiff had engaged in personal activities at the YMCA for over one hour on at least four different occasions. (Doc. 30-2 at 25-26). Accordingly, Defendant has established admissible evidence that shows a nondiscriminatory reason for the adverse employment action.

### C.     Pretext for Discrimination

Because Defendant has articulated nondiscriminatory reasons for the adverse employment action, Plaintiff must produce evidence sufficient to create a genuine issue of fact as to whether, viewing the evidence in the light most favorable to Plaintiff, Defendant's reasons are pretextual. "A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence" because it is inconsistent or otherwise not believable. *Vasquez*, 349 F.3d at 641. "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1988) (internal citation omitted). "To show pretext using circumstantial evidence, a plaintiff must put forward *specific* and *substantial* evidence challenging the credibility of the employer's motives." *Vasquez*, 349

F.3d at 642 (emphasis added). A plaintiff "must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing." *Hunt Wesson, Inc.*, 150 F.3d at 1220.

Plaintiff presents no evidence, direct or circumstantial, to support her claim that "Defendant's underlying grounds for disciplining Plaintiff are unsubstantiated at best." (Doc. 35 at 14). Plaintiff argues that "there are material issues of fact," yet presents no evidence aside from her own allegations. "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1985 (citing Fed. R. Civ. P. 56(e)). Plaintiff has failed to set forth specific facts, supported by evidence, which shows there is a genuine issue that Defendant's proffered reasons are pretextual.

Even after considering the evidence in the light most favorable to Plaintiff with all reasonable inferences drawn in her favor, the Court finds that a fact finder could not reasonably determine that the Defendant's motives for terminating Plaintiff were discriminatory, rather than a result of her conduct. *See Chuang*, 225 F.3d at 1127. Therefore, the Court will grant Defendant's Motion for Summary Judgment.

**IV.   Defendant's Motion to Strike Plaintiff's Surreply (Doc. 46).**

On January 14, 2013, Plaintiff filed a document titled "Point of Information to Defendants Reply In Support of Summary Judgment" which the Court construes as a surreply. (Doc. 42). The Local Rules do not authorize filing a surreply. *See* L.R. Civ. P. 7.2 (providing for responsive and reply memoranda only); *Kuc v. MTC Fin. Inc.*, No. CV-12-08126-PHX-GMS, 2012 WL 5269208, at *2 (D. Ariz. Oct. 24, 2012). Moreover, nothing in the surreply could be construed as a motion for leave to file a surreply. "[A]cceptance or rejection of argumentative briefs, memoranda, and other supplementary material is within the sound discretion of the court." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1314 (9th Cir. 1982).

However, even if this Court were to permit Plaintiff's surreply, Plaintiff presents

no new facts or arguments that would change the Court's reasoning as stated above. Plaintiff's arguments in the surreply appear to be an attempt to support Plaintiff's claim that she has established a prima facie case. Because the Court has determined Plaintiff did meet her burden to establish a prima facie case, Plaintiff's arguments in the unpermitted surreply are irrelevant do not change this Court's analysis.

### V. Plaintiff's Motion to Compel (Doc. 50)

Plaintiff's Motion to Compel was filed twenty-nine (29) days after the close of discovery. Consequently, the Court will deny Plaintiff's motion.

### VI. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 33) is granted.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Surreply (Doc. 46) is granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel (Doc. 50) is denied.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff, with Plaintiff to take nothing.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall close this case.

Dated this 21st day of August, 2013.

James A. Teilborg
Senior United States District Judge